JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| AMAZON TECHNOLOGIES, INC., *et al.*, | Case No. 2:23-cv-06886-FLA (JCx) |
|---|---|
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION [DKT. 32]** |
| v. | |
| DVD TRADE INT. LTD, *et al.*, | |
| Defendants. | |

## <u>RULING</u>

On March 19, 2025, Plaintiffs Amazon Technologies, Inc. ("Amazon Technologies") and Amazon Content Services, LLC ("Amazon Content Services") (collectively, "Amazon" or "Plaintiffs") filed a Motion for Default Judgment and Permanent Injunction ("Motion") against Defendants DVD Trade Int. Ltd d/b/a DVDSHELF, Media Wholesale UK d/b/a DVDSHELF, and Yangchun Zhang d/b/a DVDSHELF (collectively, "Defendants"). Dkts. 32, 32-1 ("Mot. Br."). None of the Defendants filed a response or otherwise appeared in this action. On June 26, 2025, the court found this matter appropriate for resolution without oral argument and

1  vacated the hearing set for June 27, 2025.  Dkt. 36; *see* Fed. R. Civ. P. 78(b); Local
2  Rule 7-15.  For the reasons below, the court GRANTS Plaintiffs' Motion as modified.

## BACKGROUND

On August 22, 2023, Plaintiffs brought this action alleging Defendants operate a global network of websites[1] (the "Piracy Websites") that advertise and sell pirated DVDs that infringe on Amazon's most popular and acclaimed original, creative works, including television series ("the Amazon Series").  Dkt. 1 ¶ 1 ("Compl.").  Plaintiffs further allege Defendants illegally reproduce and distribute Amazon's copyrighted content and infringe on numerous other aspects of Amazon's intellectual property ("IP"), including the use of Amazon's registered trademarks (the "Amazon Trademarks") and artwork on the pirated DVDs.  *Id.*  Amazon has exclusive rights covered by copyright registrations (the "Amazon Copyrights") in connection with certain Amazon Series (the "Copyrighted Series").  *Id.* ¶ 17.  Defendants are believed to reside primarily in China and conduct their business through the internet.  *Id.* ¶¶ 6–10.  Nevertheless, Defendants are alleged to have used a warehouse, located within this district, as a logistical hub to fulfill orders of their pirated DVDs for their United States-based customers.  *Id.* ¶ 12.

Because Plaintiffs were unable to locate valid physical addresses for Defendants, on April 19, 2024, the court granted Plaintiffs leave to serve Defendants by transmitting a copy of the Complaint, Summons, and the court's Order to Defendants electronically.  Dkt. 24.  Later that day, Plaintiffs filed a Proof of Service by Alternate Means (the "Proof of Service").  Dkt. 25.  The Proof of Service indicates Plaintiffs served Defendants in the manner authorized by the court.  *See id.*

On August 15, 2024, Plaintiffs filed an Application for Entry of Default,

---

[1] The Complaint identifies these websites as follows: www.dvd-wholesale.com; www.bilidvd.com; www.dvdshelf.com.au; www.ddddd.com.au; www.buydvds.com.au; www.dvds.trade; and www.dvdwholesale.co.uk.  The motion adds another: www.cheap-dvds.com.  Mot. Br. at 15.

2

requesting the court enter default against Defendants. Dkt. 26 at 2.[2] The court entered default against Defendants on September 16, 2024, Dkt. 28, and the clerk of court entered default against Defendants the same day, Dkt. 29.

With this Motion, Amazon requests the court "(1) enter default judgment, (2) award Amazon statutory damages under the Copyright Act and the Lanham Act totaling $6,075,000, and (3) enjoin Defendants' unlawful conduct, including by directing the transfer of the Piracy Websites to Amazon's control." Mot. Br. at 10.

## DISCUSSION

### I. Legal Standard

Given the entry of default in this case, the court may use its discretion to enter a default judgment under Fed. R. Civ. P. 55(b) and Local Rule 55(b). When examining the merits of a default judgment, courts take "the well-pleaded factual allegations in the complaint as true … except those relating to the amount of damages." *Rozario v. Richards*, 687 F. App'x 568, 569 (9th Cir. 2017) (cleaned up); *see* Fed. R. Civ. P. 8(b)(6), 55(b)(2)(B). "The district court is not required to make detailed findings of fact." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

Though default judgments are "ordinarily disfavored," the court analyzes seven factors to determine whether default judgment is appropriate. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Those seven factors are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Id.* In applying these factors, the court finds Plaintiffs' Complaint to be well pleaded and accepts its allegations as true.

---

[2] The court cites documents by the page numbers added by the court's CM/ECF System, rather than any page numbers included natively.

II.     **Analysis**

    A.     **Default Judgment**

Plaintiffs argue the *Eitel* factors favor entry of default judgment against Defendants on all of Plaintiffs' claims. *See generally* Mot. Br. The court agrees.

        1.     **Prejudice Against Plaintiffs**

Plaintiffs contend they will be prejudiced if their Motion is not granted. Mot. Br. at 21. The court agrees. Taking the factual allegations of the Complaint as true, Defendants, through their infringing conduct, caused Amazon lost sales and a diminution of good will. Compl. ¶¶ 44, 76, 80. Without an entry of default judgment, Plaintiffs will be without legal recourse to recover these funds because Defendants failed to participate in the lawsuit. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Thus, the first *Eitel* factor favors entry of default judgment.

        2.     **Substantive Merits and Sufficiency of the Complaint**

The second and third *Eitel* factors weigh the merits of Plaintiffs' substantive claim and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471. These two factors require a plaintiff to "state a claim on which [it] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Therefore, before entering judgment for Plaintiffs, the court must evaluate whether the allegations in the Complaint sufficiently establish Plaintiffs' claims. *See id.*

Plaintiffs allege four claims: (1) copyright infringement (17 U.S.C. § 501); (2) trademark counterfeiting and trademark infringement (15 U.S.C. § 1114); (3) false designation of origin and false advertising (15 U.S.C. § 1125(a)); and (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*. ("§ 17200). Compl. ¶¶ 50–85.

To prove copyright infringement under 17 U.S.C. § 501, a plaintiff must (1) "show ownership of the allegedly infringed material," and (2) "demonstrate that

the alleged infringers violate[d] at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). The Complaint alleges the Copyrighted Series are valid, registered copyrights. Compl. ¶ 51; *see Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488–89 (9th Cir. 2000), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) ("Registration is prima facie evidence of the validity of a copyright."). The Complaint further alleges Defendants infringed the Amazon Copyrights for the Copyrighted Series by reproducing and distributing copies of Plaintiffs' copyrighted materials. *See* Compl. ¶ 52. Accordingly, the Complaint has adequately alleged a claim for copyright infringement.

To prove trademark infringement under 15 U.S.C. § 1114, a plaintiff must show (1) its marks are valid and protectable trademarks; (2) it owns the trademarks; (3) it used its trademarks in interstate commerce; (4) a defendant used in commerce a reproduction or a copy of plaintiff's registered trademarks in connection with the advertising or sale of defendant's goods; and (5) such use is likely to cause confusion or mistake, or deceive consumers. *Chanel, Inc. v. Gupton*, Case No. 4:14-cv-03105-JSW, 2015 WL 1094849, at *5 (N.D. Cal. Mar. 2, 2015). The Complaint alleges Amazon Technologies owns valid and protectable trademarks it used in interstate commerce, Compl. ¶¶ 5, 18, 62, Defendants improperly used marks in interstate commerce by advertising and selling DVDs that contained the Amazon Trademarks, *id.* ¶ 75, and Defendants' use of Amazon Technologies' trademarks is likely to cause confusion among consumers by leading consumers to believe the infringing products are genuine Amazon Technologies products, *id.* ¶ 70. Thus, the Complaint has adequately stated a claim for trademark infringement.

To prove a claim for false designation of origin and false advertising under 15 U.S.C. § 1125(a), the court must apply the same standard used for trademark infringement under 15 U.S.C. § 1114. *See Brookfield Commc'ns, Inc. v. West Coast*

*Entm't Corp.*, 174 F.3d 1036, 1046 n. 6 (9th Cir. 1999).  Because the Complaint has adequately alleged a claim for trademark infringement, it also has adequately pleaded a claim for false designation of origin and false advertising.

      Lastly, with respect to Plaintiffs' UCL claim, the statute defines unfair competition as "any unlawful, unfair or fraudulent business act or practice[,] and unfair, deceptive, untrue or misleading advertising ...." Cal. Bus. & Prof. Code § 17200.  To prove a violation of the UCL, a plaintiff must establish that the asserted business practice is (1) unlawful, (2) unfair, or (3) fraudulent. *Id.*  Each prong of the UCL is a separate and distinct theory of liability. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  A plaintiff need only allege one of the three theories to plead properly a claim under § 17200. *Med. Instrument Dev. Lab'ys v. Alcon Lab'ys*, Case No. 3:05-cv-01138-MJJ, 2005 WL 1926673, at *5 (N.D. Cal. Aug. 10, 2005); *see Cel–Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  In addition, an unlawful business practice includes any practice that is forbidden by law. *Cel-Tech*, 20 Cal. 4th at 539–40.  Because the Complaint adequately pleads claims for copyright and trademark infringement, the court finds the Complaint also has sufficiently alleged a claim under the UCL.

      Therefore, because the Complaint adequately alleged Defendants' liability as to all claims, the court finds *Eitel* factors two and three support default judgment.

### 3. The Amount of Money at Stake

      As to the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176.  The court assesses whether the amount of money sought is proportional to the harm caused by Defendants' conduct.  "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014).

      Plaintiffs seek $6,075,000 in statutory damages against Defendants.  Mot. Br. at

10, 23–29; *see* 17 U.S.C. § 504, 15 U.S.C. § 1117(c)(1)–(2). Here, Defendants openly sell pirated and infringing DVDs containing unauthorized copies of the Amazon Series and use Amazon's registered trademarks and artwork on their pirated DVDs through their network of at least seven Piracy Websites. Compl. ¶¶ 1, 25, 42. Amazon has never offered for sale, sold, licensed, or otherwise authorized the sale of any DVDs of any of the Amazon Series, which Amazon currently streams exclusively through Prime Video. *Id.* ¶ 34. By selling pirated DVDs, Defendants "illegally and unfairly compete with Amazon, divert sales and subscriptions from Prime Video, and usurp Amazon's control over" its intellectual property, thereby jeopardizing Amazon's reputation and goodwill. *Id.* ¶¶ 44–45, 70, 72. This resulted in direct financial harm to Amazon in the form of lost revenues from Defendants' unauthorized exploitation of its copyrighted works. *See id*. ¶¶ 76, 84. "While the requested damages are substantial, they are 'within the boundaries set by the Copyright [and Lanham] Act[s]' and 'thus would not bar the entry of default judgment.'" *Paramount Pictures Corp. v. Does*, Case No. 2:21-cv-09317-MCS (SKx), 2022 WL 18357778, at *3 (C.D. Cal. Dec. 9, 2022) (citation omitted). Accordingly, this factor weighs in favor of entry of default judgment.

### 4. Likelihood of Dispute over Material Facts

No genuine issue of material fact exists as to the fifth *Eitel* factor, which does not weigh against default judgment. The fifth "*Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case." *Wecosign, Inc., v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) (cleaned up). "Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote." *Id.*

Despite being notified of this action, *see* Dkt. 25, Defendants have not appeared. The clerk of court entered default against Defendants, and the Complaint has alleged sufficient facts to support Plaintiffs' claims. While not entirely remote, the possibility of a dispute concerning a material fact is low. This factor, therefore,

7

supports default judgment.

### 5. Excusable Neglect

The sixth *Eitel* factor looks to whether the default was due to excusable neglect. Defendants were served with the Summons and Complaint in 2024 and have failed to answer or otherwise appear in this action. Plaintiffs also served the instant Motion on Defendants on March 20, 2025. Dkt. 33. Because Plaintiffs submitted evidence of service, the court finds default did not occur because of excusable neglect. *See Wecosign*, 845 F. Supp. 2d at 1082. This *Eitel* factor, thus, favors entering default judgment against Defendants.

### 6. Policy Favoring Decision on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But "[t]he very fact that [Rule] 55(b) exists shows that this preference, standing alone, is not dispositive." *Kloepping v. Fireman's Fund*, Case No. 3:94-cv-02684-TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996). Here, given Defendants' non-appearance, there can be no reasonable possibility of reaching a decision on the merits. Defendants' failure to defend the action makes it impractical, if not impossible, for the court to render a decision on the merits. Accordingly, while the final *Eitel* factor generally weighs against granting default judgment, the court finds this factor to be neutral here.

### 7. Conclusion on *Eitel* Factors

In sum, the *Eitel* factors weigh in favor of default judgment against Defendants. *See Eitel*, 782 F.2d at 1471–72. The court, therefore, finds it appropriate to enter default judgment in Plaintiffs' favor and against Defendants on all claims. The court now turns to the relief Plaintiffs seeks.

## B. Remedies

Plaintiffs moving for default judgment when damages are unliquidated "may submit evidence of the amount of damages by declarations[,]" which Plaintiffs have done. Local Rule 55-2. Accordingly, the court does not consider the defaulting

Defendants to have admitted the facts concerning damages that are alleged in the Complaint. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

### 1. Damages

#### i. Copyright Infringement

Under the Copyright Act, an infringer is liable for either the plaintiff's actual damages or statutory damages. 17 U.S.C. § 504(a). A plaintiff seeking statutory damages may recover between $750 and $30,000 for each infringement of a copyrighted work. *Id.* § 504(a), (c)(1). Additionally, if a copyright owner "sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." *Id.* § 504(c)(2).

If a plaintiff chooses to recover statutory damages, it need not prove actual damages. *See Columbia Pictures Indus., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 1997). The court has broad discretion to award damages within the range provided by statute. *Id.* In exercising its discretion, a district court is guided by "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (quoting *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 232 (1952)).[3]

Plaintiffs allege Defendants' infringement was willful. Mot. Br. at 17, 25 (citing Compl.). For instance, after service of the Complaint, Defendants shut down some Piracy Websites, created at least one additional Piracy Website, and redirected the old websites to new Piracy Websites. Dkt. 32-2 ¶¶ 14–23. At the time of the

---

[3] In *Columbia Pictures*, 106 F.3d at 295, the Ninth Circuit held that each episode of a television series was a separate work, even though they were licensed as a series, because each episode had independent economic value. Thus, the court here will consider each episode as a separate infringed work.

9

1  Motion, Defendants were still using the Amazon Trademarks on some of the Piracy
2  Websites. *Id.* ¶ 21. Allegations of willful infringement are deemed to be true on
3  default. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir.
4  2008). Accordingly, Amazon Content Services requests statutory damages of
5  $3,075,000, consisting of: (1) $75,000 for each of the 24 infringed copyrighted works
6  that Amazon exclusively owns (totaling $1,800,000); and (2) between $18,750 and
7  $37,500 for each of the remaining 62 copyrighted works that Amazon Content
8  Services co-owns in accordance with Amazon Content Services' ownership
9  percentage (totaling $1,275,000). *See* Mot. Br. at 23–24; *see also* Dkt. 1-2 (listing
10 Amazon Content Services' copyrighted works and registrations); Dkt. 32-4 at 2–3.
11 Thus, Amazon Content Services seeks statutory damages totaling $3,075,000. Mot.
12 Br. at 23.
13     Plaintiffs, however, provide "no baseline measure of actual damages to assist
14 the [c]ourt in determining statutory damages." *Warner Bros. Home Ent. v. Slaughter*,
15 Case No. 2:13-cv-00892-DOC (RNBx), 2013 WL 5890682, at *4 (C.D. Cal. Oct. 30,
16 2013). "In calculating statutory damages, some courts have looked to estimates of
17 actual damages." *Microsoft Corp. v. Ricketts*, Case No. 3:06-cv-06712-WHA, 2007
18 WL 1520965, at *4 (N.D. Cal. 2007); *see also Warner Bros. Home Entertainment Inc.
19 v. Jimenez*, Case No. 2:12-cv-09160-FMO (JEMx), 2013 WL 3397672, at *5 (C.D.
20 Cal. July 8, 2013) (in assessing statutory damages plaintiff "did not present any
21 information or estimate about the number of counterfeit copies [of counterfeited
22 motion pictures] sold by defendant, plaintiff's lost profits, the number of visitors to
23 defendant's website, or the amount of money spent in the course of identifying
24 defendant, to demonstrate that the amount sought is reasonable."). Although statutory
25 damages are intended to serve as a deterrent against copyright infringement, such
26 damages should not "justify such a windfall" for a plaintiff. *Microsoft Corp.*, 2007
27 WL 1520965, at *4.
28     On the other hand, Defendants' conduct was willful and egregious, and they did

not appear in the action thus preventing Defendants from securing discovery relevant to actual damages. Given the number of willful infringements committed by Defendants and the fact they are engaged in the business of selling copyrighted works despite knowing of the unlawfulness, *see* Dkt. 32-2 at 3–5, the court, in the exercise of its "broad discretion," finds the requested amount of $75,000 per infringed work (or Amazon Content Services' proportional percentage of that number based on its ownership percentage) to be a reasonable award of statutory damages and that such an award will both render the infringement unprofitable for Defendants and send a strong deterrent message to other infringers. *Accord Paramount Pictures Corp.*, 2022 WL 18357778, at *3 (awarding $150,000 per each of 138 willfully infringed works on motion for default judgment, totaling $20.7 million); *Columbia Pictures Indus., Inc. v. Galindo*, Case No. 2:20-cv-03129-MEMF (GJSx), 2022 WL 17094713, at *12 (C.D. Cal. Nov. 18, 2022) (awarding $150,000 per each of 344 willfully infringed works on motion for default judgment, totaling $51.6 million). The requested amount of $75,000 per infringement—well below the $150,000 statutory maximum—coupled with the permanent injunction, "is more than sufficient to address [Defendants'] willfulness in committing the violations and to deter future violations." *Id.* Accordingly, in the court's view, a total award of $3,075,000 in statutory damages to Amazon Content Services for copyright infringement is an adequate award.

### ii. Trademark Infringement

A party's failure to defend itself against willful trademark infringement and counterfeiting is indicative of willful trademark infringement. *See Kirakosian v. J&L Sunset Wholesale & Tobacco*, Case No. 2:16-cv-06097-CAS (PLAx), 2017 WL 4022365, at *5 (C.D. Cal. Sept. 11, 2017). When there is "willful" use of a counterfeit mark, a court may award between $1,000 and $2,000,000 in statutory damages per infringed mark. 15 U.S.C. § 1117(c)(1)–(2); *see also Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 720 (9th Cir. 2005) ("Section 1117(c) allows a plaintiff to opt for statutory damages in cases involving the

use of a counterfeit mark."). Here, Plaintiff Amazon Technologies, Inc. requests $1,000,000 per infringed trademark for a total of $3,000,000 in statutory damages. Mot. Br. at 27.

"With respect to trademark infringement, several courts have found statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Wimo Labs, LLC v. eBay, Inc.*, Case No. 8:15-cv-1330-JLS (KESx), 2017 WL 10439835, at *6 (C.D. Cal. Aug. 3, 2017) (cleaned up). Plaintiffs' allegations and evidence establish that Defendants continued to infringe willfully Amazon Technologies' protected marks even after receiving notice of this suit. *See* Dkt. 32-2 at 3–5. Accordingly, the court finds an award amount of $1,000,000 per infringement reasonable and sufficient to serve as a deterrent to Defendants (and to infringers like them). After reviewing Plaintiffs' Motion and the relevant caselaw, the court awards Plaintiff Amazon Technologies its requested $1,000,000 per infringed mark for a total of $3,000,000 in statutory damages, which is half the amount of statutory damages available. *Accord Wimo Labs, LLC*, 2017 WL 10439835, at *6 (awarding $4 million in statutory damages for two infringed trademarks on motion for default judgment); *Rolex Watch U.S.A., Inc. v. Watch Empire LLC*, Case No. 2:13-cv-09221-SJO (FFMx), 2015 WL 9690322, at *9 (C.D. Cal. Sept. 29, 2015) (awarding $5 million as half of maximum statutory damages where defendant willfully infringed five trademarks on motion for default judgment).

### iii. Conclusion

Accordingly, the court awards Amazon Content Services $3,075,000 in statutory damages for copyright infringement and Amazon Technologies $3,000,000 for trademark infringement, for a total of $6,075,000. Defendants shall be jointly and severally liable. *See Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 973 (N.D. Cal. 2015) ("'Courts in the Ninth Circuit' have 'held that in patent, trademark, literary property, and copyright infringement cases, any member of the

distribution chain' of allegedly infringing products can be 'jointly and severally liable' for the alleged misconduct.") (quoting *Unicolors, Inc. v. Macy's, Inc.*, Case No 2:14-cv-08611-RGK (SSx), 2015 WL 1020101, at *4 (C.D. Cal. Mar. 6, 2015)).

### 2. Permanent Injunction

Plaintiffs request (1) the court permanently enjoin Defendants from infringing Amazon's intellectual property and from aiding and abetting others in such infringement, and (2) order Defendants who receive actual notice of the order to transfer the domains associated with the Piracy Websites, cease providing services to the Piracy Websites, and freeze Defendants' funds. Mot. Br. at 31. It is within this court's power, under 15 U.S.C. § 1116(a), to "grant injunctions according to principles of equity and upon such terms as the court may deem reasonable" to prevent further infringement. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006).

When deciding whether to grant permanent injunctions, courts engage in "an act of equitable discretion" and apply "traditional equitable principles" embodied in a four-factor test. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 393 (2006). Under that test, a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) a remedy in equity is warranted after considering the balance of hardships between the plaintiff and defendant; and (4) the public interest would not be disserved by a permanent injunction. *Id.* at 391.

First, Plaintiffs have been injured and will continue to suffer irreparable injury to their profits and reputation unless Defendants are restrained from pirating Plaintiffs' copyrighted works. *See Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir.2007) ("Once the plaintiff has demonstrated a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted."). Furthermore, Defendants' failure to appear suggests they will continue to infringe on Amazon's copyrighted works and its registered

13

trademarks, thus compounding the irreparable injury to Plaintiffs' business, market, reputation, and goodwill. *See Lions Gate Films Inc. v. Saleh*, Case No. 2:14-cv-06033-ODW (AGRx), 2016 WL 6822748, at *6 (C.D. Cal. Mar. 24, 2016) ("Plaintiff would suffer irreparable injury in the absence of a permanent injunction because Defendants' failure to appear suggests that they will continue to infringe on Plaintiff's copyright, which will erode Plaintiff's ability to enforce its exclusive rights."). Moreover, the Ninth Circuit has recognized that irreparable harm may be shown through "[e]vidence of threatened loss of prospective customers or goodwill." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).

Second, Plaintiffs have no adequate remedy at law. "Harm resulting from lost profits and lost customer goodwill is irreparable because it is neither easily calculable, nor easily compensable and is therefore an appropriate basis for injunctive relief." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000). Without a permanent injunction, Plaintiffs would be forced repeatedly to file new lawsuits to address such behavior. *See Cont'l Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1104-05 (9th Cir. 1994) ("[T]he multiplicity of suits necessarily to be engendered if redress was sought at law, all establish the inadequacy of a legal remedy and the necessity for the intervention of equity.").

Third, the balance of hardships between the parties warrants permanent injunction. The court has found Plaintiffs' claims meritorious, and Defendants have no justifiable reason to infringe on Plaintiffs' rights. *See Columbia Pictures Indus., Inc. v. Galindo*, Case No. 2:20-cv-03129-MEMF (GJSx), 2022 WL 17094713, at *13 (C.D. Cal. Nov. 18, 2022). An "injunction will not adversely affect any of Defendants' legitimate business operations, nor will they suffer any cognizable hardship as a result of its issuance. Conversely, Plaintiff[s] will suffer harm in the form of disfavor from clients if Defendant[s'] activities continue." *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1075 (C.D. Cal. 2004).

Fourth, the public has an interest in deterring copyright and trademark

infringement and ensuring that Defendants do not continue to pirate and sell Plaintiffs' works. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 3464 U.S. 417, 429 (1984) (holding, on a motion for an injunction, that the goal of granting copyright protection to an author or artist is to "motivate the creative activity of authors and inventors by the provision of a special reward, and to allow the public access to the products of their genius after the limited period of exclusive control has expired."); *State of Idaho Potato Comm'n*, 425 F.3d at 715 (noting "[t]rademarks protect the public from confusion by accurately indicating the source of a product" and "preserve a producer's good will."). Accordingly, the court finds Plaintiffs have adequately demonstrated they are entitled to a permanent injunction enjoining Defendants' unlawful conduct.

## **CONCLUSION**

Based on the foregoing, the court hereby ORDERS as follows:

1. The court GRANTS Plaintiffs' Motion for Default Judgment and Permanent Injunction against Defendants, Dkt 32, as modified herein;
2. The court AWARDS Amazon Content Services, LLC statutory damages for Defendants' willful violations of the Copyright Act, in the total amount of $3,075,000;
3. The court AWARDS Amazon Technologies, Inc. statutory damages for Defendants' willful violations of the Lanham Act, in the total amount of $3,000,000;
4. Defendants shall be jointly and severally liable for the aforementioned amounts; and
5. The clerk of court is directed to enter judgment for Plaintiffs and against Defendants for the amounts set forth above.

It is furthered ORDERED that Defendants DVD Trade Int. Ltd, Media Wholesale, and Yangchun Zhang are hereby permanently ENJOINED AND RESTRAINED from:

a. Using the Amazon Trademarks or any reproduction, counterfeit, copy or colorable imitation of the Amazon Trademarks in connection with the distribution, advertising, offering for sale, and/or sale of any products or merchandise that are not genuine products of Plaintiffs;

b. Passing off, inducing, or enabling others to sell or pass off any DVDs that infringe the Amazon Trademarks and Amazon Copyrights as Plaintiffs' products;

c. Directly or indirectly infringing any of Plaintiffs' exclusive rights in the Amazon Copyrights for motion pictures and television programs, including without limitation by copying, distributing, offering for sale or selling (via the internet or through other means) any copies of Plaintiffs' copyrighted works, except pursuant to a lawful license or with the express authority of Plaintiffs;

d. Shipping, delivering, holding for sale, copying, distributing, returning, transferring or otherwise moving, storing, or disposing of, in any manner, DVDs or other items falsely bearing the Amazon Trademarks or any reproduction, counterfeit, copy, or colorable imitation of same, or reproducing or containing works protected by the Amazon Copyrights;

e. Operating and/or hosting Defendants' Piracy Websites;

f. Moving, destroying, or otherwise disposing of any items, merchandise, or documents relating to the Infringing Products, Piracy Websites, and Defendants' assets and operations; and

g. Aiding, abetting, counseling, commanding, inducing, or procuring the commission of, or causing any other person or entity to engage in or perform any of, the activities referred to in the above subparagraphs (a)–(f).

Further, Defendants, and those persons in active concert or participation with them, including without limitation the domain name registrars associated with the

domains listed herein[4] (the "Subject Domains"), who receive actual notice of this Order by personal service or otherwise, including without limitation the domains' current registrars, GoDaddy.com LLC and Drop.com.au Ptd Ltd, are hereby directed to transfer ownership of the Subject Domain Names to Plaintiffs.

    Any top-level domain registry for the Subject Domain Names or their administrators, including backend registry operators or administrators, who receive actual notice of this order by personal service or otherwise, including without limitation the domains' current registries Verisign, Inc., auDA, Elite Registry Limited, and Nominet UK, are hereby directed to change, or assist in changing, the registrar of record for the Subject Domain Names, including without limitation the domains listed in footnote 4, *supra*, to a new domain registrar specified by Plaintiffs, and that new domain registrar is then directed to transfer the Subject Domain Names to Plaintiffs.

    Any hosting service providers for the Piracy Websites who receive actual notice of this Order by personal service or otherwise, including without limitation the Piracy Websites' current hosting providers, are hereby directed to suspend any services to such websites and place an administrative lock on the websites to prevent accessing and downloading the websites' content or transferring the websites' content to another domain name or hosting service.

    Where this Order requires a third party to act, the third party may, upon giving notice to Plaintiffs' counsel of record in this action, seek relief from the Order by filing a motion with this court.

    The court shall retain jurisdiction to enforce the Permanent Injunction. Plaintiffs may request the Permanent Injunction apply to additional domains and websites if the court determines that evidence sufficiently establishes such domains or websites are being operated by Defendants, and infringe Amazon's copyrighted and/or

---

[4] www.dvd-wholesale.com; www.bilidvd.com; www.dvdshelf.com.au; www.ddddd.com.au; www.buydvds.com.au; www.dvds.trade; www.dvdwholesale.co.uk; and cheap-dvds.com.

trademarked works.

Plaintiffs are hereby ORDERED to serve a copy of this Order and Injunction on Defendants at the email addresses used for service.

IT IS SO ORDERED.

Dated: February 11, 2026

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge